**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

TIMOTHY AXELSON,                                                                                                      PLAINTIFF
ADC #097108

V.                                              4:09-cv-00919-WRW-JJV

BRUCE PENNINGTON, Sheriff,
Saline County; *et al.*                                                                                              DEFENDANTS

**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**

The following recommended disposition has been sent to United States District Judge William R. Wilson, Jr. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.   Why the record made before the Magistrate Judge is inadequate.

2.   Why the evidence to be proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.   The details of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## **DISPOSITION**

Plaintiff filed this action pursuant to 42 U.S.C. § 1983, alleging claims of deliberate indifference to his serious medical needs and failure to protect. Defendants, who include the Sheriff of Saline County and officers of the Saline County Detention Center, filed a Motion for Summary Judgment (Doc. No. 40), supported by a Brief and Statements of Material Fact (Doc. Nos. 41, 42). Plaintiff filed two Responses (Doc. Nos. 47, 52) and the matter is ripe for disposition.

**I.     SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact. FED.R.CIV.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 246 (1986). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e); *Mosley v. City of Northwoods*, 415 F.3d 908, 910-11 (8th Cir. 2005)("The nonmoving party may not rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial"). If the opposing party fails to carry that burden or fails to establish the existence of an essential element of its case on which that party will bear the burden of proof at trial, summary judgment should be granted. *See Celotex*, 477 U.S. at 322.

To avoid summary judgment, the nonmovant must go beyond the pleadings and come forward with specific facts, "by [his] own affidavit" or otherwise, showing that a genuine, material issue for trial exists. *Id.* at 324; FED.R.CIV.P. 56(e). A nonmovant has an obligation to present affirmative evidence to support his claims. *Settle v. Ross*, 992 F.2d 162, 163-64 (8th Cir. 1993). A litigant's verified complaint is generally considered an affidavit for purposes of summary judgment. *Burgess v. Moore*, 39 F.3d 216, 218 (8th Cir. 1994). Moreover, *pro se* complaints must be liberally construed and held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## II.   FACTS

Mr. Axelson was booked into Saline County Detention Facility on or about August 20, 2009, as a pre-trial detainee. He was sentenced on January 11, 2010, and remained at the jail until his transfer to the Arkansas Department of Correction (Doc. No. 47, p. 1).

Around the time Axelson arrived at the jail, he discovered a "swollen spot" in his mouth that was eventually diagnosed as an abscessed tooth. Plaintiff states he made his first "sick call" request on August 25, 2009, but he does not indicate to whom this request was given or directed (Doc. No. 2, p. 6). Receiving no response, Axelson says he submitted a second sick call request on September 10, 2009, along with a grievance. He was not seen by a doctor, but was given a fourteen-day course of antibiotics and was informed by unspecified officers at the jail that "he was on the dental list." *Id.* On October 1, 2009, after completing the antibiotics, Axelson states he made a second grievance and submitted another sick call request which was not answered. *Id.*

On or about October 5, 2009, Axelson was involved in an altercation with another inmate, Keke Jones (Doc. No. 5-2, p. 2/7). He suffered two black eyes, several lacerations, a gash below his left eye, and a loose tooth – but not the abscessed tooth. Having been threatened by Jones not to report the beating, Axelson called the officer on duty via intercom and reported he had been

3

injured falling down the stairs. He did not see an officer until the following morning. At breakfast, Axelson asked Corporal Richards (not a named Defendant) for pain medication. Upon observing his injuries, Corporal Richard sent Axelson to see Dr. Snodgrass, the jail physician, who prescribed ibuprofen, bandaged his wounds, and directed that he be sent to the local hospital for x-rays to rule out a concussion. *Id.* at 3. When Axelson complained of continued pain with his abscessed tooth, Dr. Snodgrass also started Plaintiff on antibiotics and prescribed steroids. *See* Doc. No. 40-2, Exhibit C, p. 21.

At 10:00 that morning, jailers brought Axelson to the front of the jail and questioned him about his injuries. He refused to tell the officers what happened, but Lt. Pennington explained he knew about the fight with Jones because he had seen the video surveillance footage. Jailers then escorted him to the sally port, where Axelson called an unidentified officer a "smartass." Defendant Hart, the transportation officer, directed that Plaintiff go to the holding cell, and said he would "take [him] to the hospital when he got ready to . . . ." (Doc. No. 5-2, p. 3). Plaintiff was not taken to the hospital until 3:00 that afternoon. Although Plaintiff describes his condition at this time as "life-threatening" (*Id.*), the x-rays showed only "soft tissue edema [with] no evidence of an acute fracture or injury." *See* Doc. No. 40-2, Affidavit of Dr. Phillip Snodgrass, at p. 16. No further treatment was recommended or provided for this injury.

Plaintiff states that "the jail staff" moved Jones out of Plaintiff's pod for 4 or 5 days, and although Jones was returned to the same pod, there was not another fight between them. Plaintiff argues that because the other inmate was a "known Blood gang member," he "should not have been out at the same time as Axelson was." (Doc. No. 5-2, p. 5). Plaintiff does not indicate whether he had previously been threatened by Jones, or had any reason to fear Jones before the fight.

On October 21, 2009, Plaintiff submitted another sick call request and again saw Dr. Snodgrass, who prescribed another round of antibiotics, ibuprofen, and Tramadol. (Doc. No. 2, p.

7).  Plaintiff made another sick call request and grievance specifically for his tooth on November 15, 2009, and saw Dr. Snodgrass on November 17, 2010.  Dr. Snodgrass states that he treated the abscessed tooth with another course of antibiotics, prescribed pain medication, and referred him to the dentist, "to treat the tooth once the abscess had been treated." (Doc. No. 40-2, p. 3).  Defendant Lester informed Plaintiff that he was on the list to see the dentist.  (Doc. No. 2, p. 7).

Plaintiff filed the instant lawsuit on December 9, 2009.[1]  On the following day, Plaintiff's tooth was extracted by a dentist, and he was prescribed more antibiotics and pain medications. (Doc. No. 40-2, p. 4).  According to the affidavit executed by Dr. Snodgrass, jail records show that Plaintiff received all the medications that were prescribed for him during this time.  *Id.* at p. 3/28.

## III.   ANALYSIS

### A.   Deliberate Indifference

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833 (1998)(citation omitted).  In *Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006), the United States Court of Appeals for the Eighth Circuit held that deliberate indifference is the "appropriate standard of culpability for all claims that prison officials failed to provide pretrial detainees with adequate food, clothing, shelter, medical care and reasonable safety." *Id.*

"In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  The deliberate indifference standard includes "both an objective and a subjective

---

[1] Plaintiff has argued that it was the filing of the instant action that spurred Defendants to act and provide his dental treatment.  However, the summonses were not sent to Defendants until January 6, 2010.  Thus, Defendants would not have been aware of this lawsuit until after that date.

component: 'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000).

"[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996). In *Dulany v. Carnahan*, 132 F.3d 1234 (8th Cir.1997), the United States Court of Appeals for the Eighth Circuit said:

> As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment. Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976). Mere negligence or medical malpractice, however, are insufficient to rise to a constitutional violation. *Id.* at 106, 97 S.Ct. at 292.

*Dulany,* 132 F.3d at 1239. *See also Tlamka v. Serrell*, 244 F.3d 628, 633 (8th Cir. 2001).

"To avoid summary judgment an inmate alleging that a delay in treatment constitutes a constitutional deprivation must produce medical evidence to establish that the delay had a detrimental effect." *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006). *See also Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995)(an inmate who complains that a delay in medical treatment constitutes a constitutional violation must provide "verifying medical evidence" in the record to establish the detrimental effect of the delay, in order to succeed on his claim).

The Court finds that Plaintiff's abscessed tooth qualifies as an objectively serious medical need as of November 15, 2009, when he notified jailers that the previously prescribed conservative course of treatment was not effective. When notifying Defendants by use of the grievance process, Axelson reported he had been having issues with his tooth since August 20, 2009, that he had been

treated with antibiotics twice but the antibiotics had not worked, and that he thought he needed to see a dentist because the tooth was still infected. (Doc. No. 2, p.10)

While Axelson states he submitted numerous sick call slips and grievances, the evidence before the Court shows that Defendants did treat Plaintiff.[2] Unquestionably, the initial conservative course of treatment with antibiotics was ineffective. However, when Axelson notified jail personnel his abscessed tooth continued to be a problem, they went to the next step and referred him to a medical doctor. He was seen by Dr. Snodgrass two days later and was prescribed antibiotics and pain medication. (Doc. No. 42). Dr. Snodgrass also referred Axelson to a dentist. *Id.* Thereafter, on December 10, 2009, Axelson's tooth was extracted by a dentist. *Id.* While this Court does not doubt that Axelson would have preferred immediate treatment for the pain he suffered as a result of his abscessed tooth, the care Defendants provided him does not amount to constitutional mistreatment. Defendants must be found free from liability because they responded reasonably to Axelson's request, even though harm - in the form of pain - was not averted. *Farmer v. Brennan*, 511 U.S. 825, 844 (1994). "In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that he did not feel he received adequate treatment." *Dulany v. Carnahan*, 132 F.3d at 1240 (8th Cir. 1997).

Plaintiff's allegations, at best, amount to a question of negligence. Plaintiff did receive

---

[2]Axelson makes conflicting allegations regarding his requests for treatment. He intimates that he was suffering from severe pain for weeks and his requests for treatment went ignored. Yet, the grievance form he submitted with his initial Complaint paints a different picture. (Doc. No. 2, p.10) Based on this document and lack of any documentation to show otherwise, the Court found, as stated above, that Defendants had been trying to treat Axelson's abscessed tooth through conservative treatment. Only once Axelson requested to be seen on November 15, 2010, did jailers know that more treatment was necessary. Nevertheless, if Axelson can provide documentation whereby he had been seeking treatment and his requests went ignored, he should submit those documents to District Judge Wilson as a part of his written objections.

treatment for his tooth. His tooth was not extracted until conservative courses of treatment were shown to be ineffective. "The prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995). "Mere negligence or medical malpractice [is] insufficient to rise to a constitutional violation." *Estelle v Gamble*, 429 U.S. at 106.

Additionally, aside from the pain he suffered, Plaintiff has failed to establish that any delay in treatment had some detrimental effect. Plaintiff has not alleged that he continues to suffer any problems following the eventual extraction of the tooth.

The same holds true with regard to any allegation that Defendants were deliberately indifferent by delaying treatment after he was injured while fighting. While jailers could have taken Axelson to the hospital more promptly, he has not shown any detrimental effect as a result of that delay.

Moreover, as Defendants correctly note in their Motion, a claim of deprivation of a constitutional right cannot be based on a respondeat superior theory of liability. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Thus, Sheriff Pennington cannot be held liable merely because he employs the officers allegedly responsible for violating Plaintiff's constitutional rights. *Id.* Similarly, Lt. Pennington cannot be held liable solely on the basis that he was a supervisor of the individuals alleged to be responsible for constitutional violations. *Id.* There is no allegation that Sheriff Pennington, Lt. Pennington, or Sgt. Lester were personally involved in any way in the actions taken by the other named defendants. *See Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997)(no liability because defendants were neither doctors nor personally involved in decision making); *Mark v. Nix*, 983 F.2d 138, 139-40 (8th Cir. 1993)(section 1983 liability requires some personal involvement or responsibility).

For all the above reasons, Defendants' Motion for Summary Judgment should be granted and Axelson's claims of deliberate indifference to a serious medical need should be dismissed.

**B.     Failure to Protect**

Due process "protects pretrial detainees both from deliberate exposure to violence and from failure to protect when prison officials learn of a strong likelihood that a prisoner will be assaulted." *Anderson v. Gutschenritter*, 836 F.2d 346, 349 (7th Cir. 1988)(quoting *Matzker v. Herr*, 748 F.2d 1142, 1150 (7th Cir. 1984)).  Similarly, the Eighth Amendment imposes a duty on the part of prison officials to protect convicted prisoners from violence at the hands of other prisoners. *See e.g., Perkins v. Grimes*, 161 F.3d 1127, 1129 (8th Cir. 1998).  In addressing failure to protect claims brought by pretrial detainees, the United States Court of Appeals for the Eighth Circuit has noted that pretrial detainees are entitled to at least as much protection as a convicted inmate and has applied Eighth Amendment analysis to claims brought both by pretrial detainees and convicted prisoners. *See Perkins*, 161 F.3d at 1129-1130. *See also Crow v. Montgomery*, 403 F.3d 598, 600 (8th Cir. 2005)(analyzing a pretrial detainee's failure to protect claim under the same Eighth Amendment analysis used for similar claims brought by convicted prisoners).

In *Riley v. Olk-Long*, 282 F.3d 592 (8th Cir. 2002), the Eighth Circuit stated:

> An Eighth Amendment claim for failure to protect is comprised of two elements. First, an "inmate must show that [he] is incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).  Second, the inmate must establish that the defendant prison official recklessly disregarded that risk. *Jackson v. Everett*, 140 F.3d 1149, 1151 (8th Cir. 1998). "For the purposes of failure to protect claims, it does not matter . . . whether a prisoner faces an excessive risk of attack for reasons personal to [him] or because all prisoners in [his] situation face such a risk." *Hott v. Hennepin County, Minn*., 260 F.3d 901, 906 (8th Cir. 2001)(internal quotations omitted).  The question is whether a prison official has a "sufficiently culpable state of mind," meaning that [he] is deliberately indifferent to an inmate's safety. *Farmer*, 511 U.S. at 834 (internal quotation omitted).  The prison official's state of mind is measured by a subjective, rather than an objective, standard. *Id*. at 838-39; *see also Jackson*, 140 F.3d at 1152 ("[D]eliberate indifference must be viewed from [defendant's] perspective at the time in question, not with hindsight's perfect vision.").  "[T]he

> official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [he] must also draw the inference." *Farmer*, 511 U.S. at 837.

*Riley*, 282 F.3d at 595. *See also Krein v. Norris*, 309 F.3d 487 (8th Cir. 2002)

Thus, to prevail on his failure to protect claim, Plaintiff must show: (1) that his incarceration posed a substantial risk of serious harm, and (2) the Defendants knew of and disregarded an excessive risk to his safety. *Pagels v. Morrison*, 335 F.3d 736, 740 (8th Cir. 2003). To establish the second component, Plaintiff must show that Defendants acted, or failed to act, with deliberate indifference to his safety. Negligence is not sufficient. *Id.* Even if the conduct was unreasonable, this is not enough because "reasonableness is a negligence standard." *Id.* at 742 (internal quotation marks and citation omitted). Plaintiff must have placed the Defendants "on notice" that this inmate posed a threat of serious injury to him. *Perkins*, 161 F.3d at 1130. Moreover, Plaintiff must allege "personal involvement" on the part of each individually-named defendant. *See Szabla v. City of Brooklyn Park,* 486 F.3d 385, 397 (8th Cir. 2007)(no *respondeat superior* liability under § 1983, and no liability merely because official employs the individual who allegedly violated the plaintiff's constitutional rights); *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007)("[A] warden's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement."); *Mark v. Nix*, 983 F.2d 138, 139-40 (8th Cir. 1993)(section 1983 liability requires some personal involvement or responsibility).

In this case, Axelson has not alleged, nor has the Court ascertained, any facts that would suggest any of the Defendants should have been on notice that Plaintiff was at risk of harm by Keke Jones or any other inmate. Furthermore, based upon Plaintiff's own description of events, after the assault he continued to deny to jailers that he had been in a fight with anyone, much less Jones. Although Plaintiff makes the sweeping charge that fights are frequent at the jail and other inmates

have been hurt, he has not made any allegations that amount to a pervasive risk of harm[3] and cannot state a claim based on injuries to others.

### C. Due Process

Plaintiff states in his Response (Doc. No. 52) to the pending summary judgment motion that the Defendants "failed to give me due process, by not giving me a hearing before putting me in punitive seg. for 30 days after the fight." Plaintiff has never before raised any issue related to a denial of due process with regard to a disciplinary imposed for the fight with inmate Jones, and the Court will not allow him to proceed with a new claim in this case at this point in the litigation. If Plaintiff believes his constitutional rights were violated by the Defendants in this matter, he may file these claims in a new lawsuit.

## IV. CONCLUSION

Therefore, the Court finds as a matter of law that Plaintiff has not set forth specific facts to show a genuine issue for trial, and that Defendants' Motion for Summary Judgment should be granted.

IT IS, THEREFORE, RECOMMENDED that:

1. Defendants' Motion for Summary Judgment (Doc. No. 40) be GRANTED and this action be DISMISSED with prejudice.

2. All other pending motions be DENIED as moot; and

3. The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis*

---

[3]"To establish 'reckless disregard' by prison officials, an inmate must show that he was faced with a 'pervasive risk of harm' and that the prison officials failed to respond reasonably to that risk." *Andrews v. Siegel*, 929 F.2d 1326, 330 (8th Cir. 1991). Showing a "pervasive risk of harm" "requires evidence of frequent violence . . . which places a prisoner or group of prisoners in reasonable fear for their safety; and prisoners must apprise the prison officials of the existence of the problem and the need for protective measures. In every case, a 'pervasive risk' is something more than a single incident and something less than a riot. *Falls v. Nesbitt*, 966 F.2d 375, 378 (8th Cir. 1992).

appeal from any Order adopting these recommendations would not be taken in good faith.

DATED this <u>2nd</u> day of July, 2010.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE